

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO. 07 CIV 6371

CFIRSTCLASS CORPORATION, a
Florida Corporation,

    Plaintiff,

vs.

**COMPLAINT FOR DAMAGES**

SILVERJET, PLC., a Foreign Corporation,

    Defendant.

_____/

The Plaintiff herein, CFIRSTCLASS CORPORATION, a Florida Corporation (hereinafter, CFC) sues the Defendant, SILVERJET, PLC., a Foreign Corporation (hereinafter, SILVERJET) and states:

### COMMON ALLEGATIONS

1. This is an action for damages in excess of $75,000.00, exclusive of interest and costs.

2. CFC is a citizen of the State of Florida, being incorporated in and having its principal place of business in the State of Florida

3. SILVERJET is a Foreign Corporation, having its corporate existence and maintaining its principal place of business in London, England.

4. SILVERJET does business in the United States of America in the States of New York and New Jersey and maintains a corporate office for the management of its business affairs in New York City, State of New York. This office is denominated as its "U.S. Corporate Headquarters".

5. On Approximately June 7, 2005 and January 18, 2006, CFC entered into an Aircraft Seat Charter Agreement and a General Sales Agency Agreement with an entity known as FlyJet Limited, a London based enterprise. These Agreements essentially called for FlyJet Limited to furnish CFC with a specially configured Boeing 767-200 aircraft and, upon furnishing of such an aircraft, CFC was to commence flying certain international routes from England to the United

States and the Caribbean.

6. Based on the execution and expected fulfillment of these Agreements, CFC furnished deposits to FlyJet Limited in the total amount of $750,000.00. Such deposits remain outstanding and in the possession of SILVERJET, FlyJet's successor in interest.

7. Based on the execution of these Agreements, CFC undertook substantial expenditures, exceeding $2,000,000.00 in goods and services to complete the custom fit-out of this aircraft and to prepare to service the aircraft when it was delivered.

8. In approximately October of 2006, SILVERJET acquired all of the issued shares of FlyJet Limited and, thereby, succeeded to all of the assets of FlyJet Limited.

9. The purpose for SILVERJET's acquisition of FlyJet was to take control of the "Specially Configured Boeing 767-200 aircraft" for its own purposes rather than completing the fit-out of such aircraft and delivery of same to CFC. SILVERJET required this particular aircraft in order to inaugurate transatlantic service in its own name, for its own benefit and for its own customers. SILVERJET has and continues to derive substantial income from the use of this aircraft.

10. In an attempt to mitigate its damages and in an attempt to ameliorate the harm done by SILVERJET'S appropriation of the aircraft contracted to CFC, CFC in November of 2006 agreed to a delay in delivery of a comparable aircraft upon agreement by SILVERJET to secure such delivery by February of 2007 and, upon failure of such delivery, upon agreement by SILVERJET to pay a monthly delay penalty of $100,000.00. Such agreement, also incorporating other specific terms - including a $1,000,000.00 "breakup fee", was acknowledged by SILVERJET on November 30, 2006.

11. SILVERJET did not and has not furnished either the original aircraft or an alternative aircraft to CFC and, on May 25, 2007 attempted to terminate the original agreements between CFC and FlyJet Limited by transmitting a "termination letter" to CFC, such letter also attempting to assess "charges" against CFC's deposit of $750,000.00 still held by SILVERJET.

**COUNT I**
**(Tortious Interference with Advantageous Business Relationship)**

12. The Plaintiff reavers and realleges the allegations contained in Paragraphs 1 through



11 as if fully set forth herein.

13. CFC enjoyed valuable rights through its business relationship with FlyJet, in that it had the right to use of a specially configured Boeing 767-200 aircraft which FlyJet was in the process of configuring and fitting to CFC's needs.

14. SILVERJET, with the specific intent to acquire the use of this aircraft for its own purposes, undertook and did acquire a controlling shareholder interest in FlyJet and appropriated the use of this aircraft to its purposes.

15. The appropriation of use of the aircraft to its own purposes by SILVERJET was done with full knowledge of the existing rights to the use of the aircraft which inhered in CFC.

16. The appropriation of use of the aircraft by SILVERJET was done without the agreement of CFC and in direct violation of its rights.

17. As a direct and proximate result of the interference by SILVERJET in the business relationship between FlyJet and CFC, CFC has been damaged both generally and specially in that it expended substantial sums in the acquisition of goods and services to complete the fit-out of the aircraft, it developed a route for the aircraft and it developed a program for selling seats on such aircraft and it was incapable of commencing or maintaining service on the routes established.

18. The actions of SILVERJET were deliberate and maliciously disregarded the existing rights of CFC.

WHEREFORE, CFC demands judgment for compensatory damages, special damages and punitive damages against SILVERJET, demands costs of this action and further demands TRIAL BY JURY.

## COUNT II
### (Tortious Interference with Contract)

19.    12. The Plaintiff reavers and realleges the allegations contained in Paragraphs 1 through 11 as if fully set forth herein.

20. CFC enjoyed valuable rights through its business relationship with FlyJet, in that it had the right to use of a specially configured Boeing 767-200 aircraft which FlyJet was in the process of configuring and fitting to CFC's needs.

21. SILVERJET, with the specific intent to acquire the use of this aircraft for its own purposes, undertook and did acquire a controlling shareholder interest in FlyJet and appropriated the use of this aircraft to its purposes.

22. The appropriation of use of the aircraft to its own purposes by SILVERJET was done with full knowledge of the existing rights to the use of the aircraft which inhered in CFC.

23. The appropriation of use of the aircraft by SILVERJET was done without the agreement of CFC and in direct violation of its rights.

24. As a direct and proximate result of the interference by SILVERJET in the business relationship between FlyJet and CFC, CFC has been damaged both generally and specially in that it expended substantial sums in the acquisition of goods and services to complete the fit-out of the aircraft, it developed a route for the aircraft and it developed a program for selling seats on such aircraft and it was incapable of commencing or maintaining service on the routes established.

25. The actions of SILVERJET were deliberate and maliciously disregarded the existing rights of CFC.

WHEREFORE, CFC demands judgment for compensatory damages, special damages and punitive damages against SILVERJET, demands costs of this action and further demands TRIAL BY JURY.

### COUNT IV
### (Unjust Enrichment)

26. The Plaintiff reavers and realleges the allegations contained in Paragraphs 1 through 11 as if fully set forth herein.

27. SILVERJET acquired for its own use and benefit the specially configured Boeing 767-200 aircraft in order that it could commence and continue the operation of scheduled first class airline service from London to various points, including Newark, New Jersey.

28. The use of the aircraft was appropriated by SILVERJET at the cost of and to the detriment of CFC that had prior contractual rights to the fitting-out and use of this airplane.

29. As a result of the actions of SILVERJET, SILVERJET has been unjustly enriched at the cost and expense of CFC.

WHEREFORE, CFC demands judgment for damages.

Dated: _July 12, 2007_

                                                    SCHWARTZ & SALOMON, P.C.
                                                   225 Broadway, Suite 4200
                                                   New York, New York 10007
                                                   (212) 732-6460

                                                   By: _____
                                                         JOSEPH N. SALOMON
                                                         Bar No. JS-4085