UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CFIRSTCLASS CORPORATION,

                          Plaintiff,                    07 Civ. 6371 (SHS)

        - against -                                     ORAL ARGUMENT
                                                        REQUESTED
SILVERJET PLC,

                          Defendant.


**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**


MORRISON & FOERSTER LLP
Karen L. Hagberg
Geoffrey C. Upton
1290 Avenue of the Americas
New York, New York 10104
(212) 468-8000

Attorneys for Defendant Silverjet plc

Defendant Silverjet plc ("Silverjet") respectfully submits this memorandum of law in support of its motion to dismiss the Complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and 12(b)(6) for failure to state a claim upon which relief may be granted.

## PRELIMINARY STATEMENT

This is, at heart, a contract dispute between Plaintiff CFirstClass Corporation ("CFC"), a Florida-based airline charter company, on the one hand, and Defendant Silverjet, a United Kingdom-based airline company and its wholly-owned subsidiary, FlyJet Limited ("FlyJet"), on the other. Plaintiff is attempting, however, to couch this dispute as a suit in tort in an attempt to evade the governing law and exclusive jurisdictional provisions of the contracts in question. But the broad forum selection clauses in the contracts underlying this litigation govern any disputes arising out of the contracts and thereby bar Plaintiff from bringing this litigation in this Court.

Moreover, Plaintiff fails to, and cannot, state a claim against Silverjet in tort. As a preliminary matter, Plaintiff has existing causes of action for breach of contract against FlyJet, a United Kingdom-based airline charter company and Silverjet's wholly-owned subsidiary, as to the same subject matter. Plaintiff thus should be precluded from bringing tort claims, which rest on the same facts, against Silverjet. In addition, Plaintiff's tort claims fail because Silverjet was at all times motivated by a legitimate economic interest. Silverjet openly and legally purchased FlyJet and then legitimately put one of FlyJet's assets – an aircraft – to use for its own business purposes. Silverjet did not, therefore, *wrongly* interfere with the business relationship or the contracts between FlyJet and CFC, as it did not acquire FlyJet or put the aircraft to use with any improper motivation. To the contrary, Silverjet did its best to make good on the underlying contracts between CFC and FlyJet.

Plaintiff, therefore, has no claim in tort against Silverjet. If it wishes to pursue legal action in relation to the performance of these contracts, it must pursue its claims in England, as per the explicit, agreed governing law and jurisdictional provisions in the contracts at issue in this matter.

## STATEMENT OF RELEVANT FACTS[1]

On October 1, 2007, prior to launching its trans-Atlantic business class airline service between London, England, and Newark, N.J., Silverjet acquired all of the issued shares of FlyJet. Compl. ¶ 8. FlyJet had under lease a Boeing 767-200 aircraft, which was subject to two contracts FlyJet had previously entered into with CFC: an Aircraft Seat Charter Agreement dated June 7, 2005, and a General Sales Agency Agreement dated January 18, 2006 (the "contracts"). Compl. ¶ 5. *See* Declaration of Geoffrey C. Upton dated October 1, 2007 ("Upton Decl."), Exs. A and B (Aircraft Seat Charter Agreement and General Sales Agency Agreement). In connection with these contracts, CFC paid FlyJet a deposit of $750,000. Compl. ¶ 6. However, at the time of Silverjet's acquisition of FlyJet, the contracts were not being implemented. Compl. ¶ 5 ("upon furnishing of such an aircraft, CFC was to commence flying certain international routes from England to the United States and the Caribbean").[2]

Silverjet acquired FlyJet in order to use the Boeing 767-200 to launch its inaugural trans-Atlantic service. Compl. ¶ 9.[3] In relation to the contracts between FlyJet and CFC, Silverjet promptly entered negotiations with CFC regarding the fulfillment by both parties of the terms of the contracts. Compl. ¶ 10.[4] Upon the failure of the parties to reach a revised agreement as to the terms of the contracts, according to the Complaint, Silverjet then attempted to terminate the contracts on May 25, 2007. Compl. ¶ 11. This litigation followed.

---

[1] Plaintiff's factual allegations are accepted as true for purposes of this motion only, except for the allegations which are specifically contradicted on the face of the documents Plaintiff refers to in the Complaint.

[2] Indeed, at the time of the acquisition of FlyJet by Silverjet, neither CFC nor FlyJet were in a position to perform under the contracts. On that basis alone, Silverjet's acquisition of FlyJet cannot be the basis for any of the tort claims Plaintiff asserts in this action. However, because that issue would likely raise factual issues, Silverjet does not rely on it as a basis for the present motion. In addition, there appears to be a dispute between the parties as to whether and when the contracts terminated. This issue, too, is not relevant to the present motion.

[3] Other aspects of FlyJet, including its licenses and pilots, were in fact of greater value to Silverjet than the aircraft itself at the time of acquisition.

[4] This fact in itself indicates that Silverjet had no intention of interfering with the contracts to Plaintiff's detriment.

**ARGUMENT**

In the Second Circuit, dismissal for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure based on the existence of a forum selection clause is proper where the plaintiff fails to "make a prima facie showing by alleging facts which, if true, would support the court's exercise of jurisdiction." *Rohrbaugh v. United States Mgmt.*, 2007 U.S. Dist. LEXIS 47978, at *8-9 (E.D.N.Y. July 2, 2007), quoting *New Moon Shipping Co. v. MAN B & W Diesel AG,* 121 F.3d 24, 29 (2d Cir. 1997).  Under the Second Circuit's framework, "the moving party must first show evidence of 'an apparently governing forum selection clause.' … The burden is then on the plaintiff who brought suit in a forum other than the one designated by that clause 'to make a "strong showing" in order to overcome the presumption of enforceability.'" *Id.* (internal citations omitted).

Under Federal Rule of Civil Procedure 12(b)(6), dismissal for failure to state a claim is proper where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999) (internal citation and quotation marks omitted).  All well-pleaded factual allegations in the Complaint are presumed to be true. *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Charles W. v. Maul*, 214 F.3d 350, 356 (2d Cir. 2000).  However, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Gebhardt v. Allspect, Inc.*, 96 F. Supp. 2d 331, 333 (S.D.N.Y. 2000) (internal citation and quotation marks omitted).  Moreover, where allegations in the complaint are contradicted by the documents on which the complaint is based, the documents are controlling and the contrary allegations should not be given weight. *Honess 52 Corp. v. The Town of Fishkill*, 1 F. Supp. 2d 294, 300 (S.D.N.Y. 1998); Wright & Miller, Federal Practice & Procedure: Civil 3d § 1357 (see text at n.31 and accompanying citations).

Under these well-established standards, this Court should grant Silverjet's motion to dismiss, for the following reasons.

I.    **CFC HAS NO CLAIMS IN THIS COURT AGAINST SILVERJET BECAUSE THE CONTRACTS' BROAD FORUM SELECTION CLAUSE SHOULD BE HONORED**

Courts are to give broad consideration to forum selection provisions – especially where they are mandatory, as is the case here. Both contracts between CFC and FlyJet state: "This Agreement wherever made or to be performed shall be governed and construed in accordance with English law and all disputes arising hereunder shall be submitted to the exclusive jurisdiction of the Courts of England and Wales." *See* Upton Decl., Exs. A and B (Aircraft Seat Charter Agreement, at p. 8, and General Sales Agency Agreement, at p. 8.)[5] These clauses are mandatory rather than permissive in that, "[o]n its face, … the language plainly indicates 'the parties' intent to make jurisdiction exclusive.'" *Direct Mail Prod. Servs. v. MBNA Corp.*, 2000 U.S. Dist. LEXIS 12945, at *7 (S.D.N.Y. September 7, 2000) (internal citations omitted). "[I]f the clause is found to encompass the parties and the claims in this action, then this Court must dismiss the action for lack of jurisdiction, … absent a clear showing … that 'enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'" *Id.* (internal citations omitted).

In recognition of the strong public policy favoring forum selection clauses, courts have construed contractual forum selection clauses "to encompass claims beyond the breach of the contract containing the clause." *United States Fid. & Guar. Co. v. Petroleo Brasileiros S.A.-Petrobras*, No. 98 Civ. 3099 JGK, 2001 WL 300735, at *18 (S.D.N.Y. Mar. 27, 2001) (citing *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1361 (2d Cir. 1993)). The federal courts routinely apply such broad forum selection clauses to tort claims brought "in relation to" a contract. *See, e.g.*, *Terra Int'l Inc. v. Mississippi Chem. Corp.*, 119 F.3d 688, 690, 693 (8th Cir. 1997) (forum selection clause encompassing "[a]ny dispute or disputes arising between the parties hereunder" applied to products liability claim); *Lambert v. Kysar*, 983 F.2d 1110, 1121-22 (1st Cir. 1993)

---

[5] This Court may take judicial notice of documents specifically referred to in or relevant to the complaint on a motion to dismiss. *See, e.g., Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effects, which renders the document integral to the complaint") (internal citation and quotation marks omitted).

(forum selection clause encompassing "any action . . . brought to enforce [the] terms and conditions" of agreement applied to related claims for misrepresentation and unfair business practices) (alteration in original).

Likewise, where a broad forum selection clause is part of an agreement defining the parties' business relationship, it has been held to encompass any disputes arising directly or indirectly out of that underlying business relationship. "If forum selection clauses are to be enforced as a matter of public policy, that same public policy requires that they not be defeated by artful pleading of claims…. [W]here the relationship between the parties is contractual, the pleading of alternative non-contractual theories of liability should not prevent enforcement of such a bargain" as to the appropriate forum for litigation. *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 203 (3d Cir. 1983). *See also Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 207-09 (7th Cir. 1993) ("Regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action"); *Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987) (forum selection clause encompassing any "case or controversy arising under or in connection with" agreement applied to "all causes of action arising directly or indirectly from the business relationship"); *Warnaco Inc. v. VF Corp.*, 844 F. Supp. 940, 948-49 (S.D.N.Y. 1994) (plaintiff's claims subject to forum selection clause encompassing "any dispute or issue arising hereunder" where "the plaintiff's entire business relation with defendant stemmed from" the agreement); *Weingrad v. Telepathy, Inc.*, No. 05 Civ. 2024 (MBM), 2005 WL 2990645, at *3 (S.D.N.Y. Nov. 7, 2005) (plaintiff's tort claims subject to forum selection clause encompassing "any disputes hereunder including disputes related to the services provided" where "the entire business relationship between the parties stems from . . . contract"); *Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*, No. 03 Civ. 5262 (JFK), 2004 WL 421793, at *7 (S.D.N.Y. Mar. 5, 2004) (plaintiff's tort claims subject to forum selection clause in agreement encompassing claims "arising directly or indirectly" out of agreement where "it is readily apparent that the causes of

action are the products of the contractual relationship contemplated in and memorialized by the [agreement]").

Moreover, courts have held that a non-party to a contract may invoke a forum selection clause "if the non-party is 'closely related' to one of the signatories" such that it is "foreseeable" that the parties would be bound by the provision.  *Direct Mail Prod. Servs.*, 2000 U.S. Dist. LEXIS 12945, at *7-8 quoting *In re Lloyd's Am. Trust Fund Litig.*, 954 F. Supp. 656 (S.D.N.Y. 1997).  Parties have been held to be "closely related" where it is alleged that a defendant entirely controlled a signatory to the agreement, *Hugel*, 999 F.2d at 209-10 (upholding district court's finding that non-party corporations owned and controlled by signatory plaintiff are so closely related to the dispute that they are equally bound by the forum selection clause), or "where the non-party is an alter-ego of the signatory, a successor entity to the signatory, or is owned or primarily owned by the signatory."  *Sealord Marine Co. v. Am. Bureau of Shipping*, 220 F. Supp. 2d 260 at *270 (S.D.N.Y. 2002), citing *Maritime Ins. Co. v. M/V Sea Harmony*, 1998 U.S. Dist. LEXIS 6294, No. 97 Civ. 3818, 1998 WL 214777, at *2 (S.D.N.Y. May 1, 1998).

In *Direct Mail*, Plaintiff Direct Mail Production Services, an English corporation, had a written agreement with Defendant MBNA Direct containing a forum selection clause mandating that English courts would have exclusive jurisdiction under the agreement.  After an alleged breach of the contract by MBNA, Direct Mail brought suit in the Southern District of New York alleging, *inter alia*, tortious interference with business relationships by MBNA and co-defendant Harte-Hanks.  The Court held that, although none of the defendants was a signatory to the agreement containing the forum selection clause, the relationship between the non-parties and the signatory was sufficiently close so as to be foreseeable that they would be bound by the contract.  Accordingly, the forum selection clause was enforceable against a non-party.  Further, the fact that plaintiffs had pled tort claims, rather than breach of contract, did not mean that the forum selection clause would not apply:

> "[A] forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if 'the gist' of those claims is a breach of that relationship."  Thus, the

> circuit courts have held that a contractually-based forum selection
> clause will also encompass tort claims if the tort claims "ultimately
> depend on the existence of a contractual relationship" between the
> parties, or if "resolution of the claims relates to interpretation of
> the contract," or if the tort claims "involve the same operative facts
> as a parallel claim for breach of contract."

*Direct Mail*, 2000 U.S. Dist. LEXIS 12945 at *16-17 (internal citations omitted). The Court

added that the "common thread running through these various formulations is the inquiry

whether the plaintiff's claims depend on rights and duties that must be analyzed by reference to

the contractual relationship." *Id.*

Similarly, here, analysis of the tort claims pled by CFC will invariably entail reference to

the rights and duties of CFC and FlyJet as defined in the contracts – contracts which CFC itself

also attempted to renegotiate, as pleaded directly in its Complaint. Compl. ¶ 10. Moreover, as in

*Direct Mail*, Plaintiff here "refers to the [contracts] repeatedly as the predicate to its claims," *id.*

at *19, including Silverjet's alleged failure to specifically perform and its alleged failure to

deliver a particular aircraft to CFC. Compl. ¶ 10. Accordingly, there can be no question that the

exclusive, mandatory forum selection clause contained in the contracts at issue encompasses all

of the claims asserted by CFC in this action. For this reason, Plaintiff's entire complaint should

be dismissed for lack of subject matter jurisdiction.

## II.   CFC FAILS TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP (COUNT I) OR CONTRACT (COUNT II)

Even if the broad forum selection clause in the contracts at issue does not apply here,

Plaintiff has not adequately pled – and, indeed, cannot plead – either of its tort claims against

Silverjet.[6]

---

[6] As the forum, the Court is entitled to apply its own laws, including its conflicts of laws principles. Under New York law, "the relevant analytical approach to choice of law in tort actions is the 'interest analysis,' under which 'the law of the jurisdiction having the greatest interest in the litigation will be applied.'" *Johnson & Johnson v. Guidant Corp.*, 2007 U.S. Dist. LEXIS 64114, at *58 (S.D.N.Y. August 29, 2007) (citation omitted). However, in the absence of any substantive difference in the applicable law of competing jurisdictions, "a New York court will dispense with choice of law analysis; and if New York law is among the relevant choices, New York courts are free to apply it." *IBM v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004). Since there are no "substantive differences" in the relevant principles of tort law between New York and Florida, New York law is applied here, with reference to Florida law.

### A. CFC Fails to State a Claim for Tortious Interference with Advantageous Business Relationship

To state a claim for tortious interference with business relations under New York law, a plaintiff must allege: (1) business relations between plaintiffs and a third party; (2) defendant's interference with those business relations; (3) that defendant acted with the sole purpose of harming the plaintiff or, where defendant acted to advance its own competing interests, that defendant used dishonest, unfair, or improper means, such as criminal or fraudulent conduct; and (4) injury to the relationship. *Fine Foods Int'l, L.P. v. North Am. Fine Foods Inc.*, 1999 U.S. Dist. LEXIS 20007, at *34 (S.D.N.Y. Nov. 12, 1999).[7]

CFC fails to state a claim for tortious interference with business relations because it fails to adequately allege the third element – that Silverjet acquired FlyJet and used its plane with the purpose of harming CFC or that it did so by "improper means." In fact, to the contrary, CFC admits on the face of the Complaint that "[t]he purpose for Silverjet's acquisition of FlyJet was to take control of the 'Specially Configured Boeing 767-200 aircraft' *for its own purposes*" and that Silverjet "required this particular aircraft in order to inaugurate transatlantic service *in its own name, for its own benefit and for its own customers*." Compl. ¶ 9 (emphasis added). Therefore, Plaintiff plainly admits that Silverjet did not use the aircraft leased to FlyJet with the purpose of harming Plaintiff or for improper motives; rather, its actions were justified insofar as it acted in its own legitimate business interest. Indeed, Plaintiff admits that upon acquiring FlyJet, Silverjet attempted to provide CFC with a "comparable aircraft," Compl. ¶ 10, which itself indicates that Silverjet had no intention of maliciously or improperly interfering with the contracts to CFC's detriment. *See Wells v. Marton*, 794 F. Supp. 1092, 1097 (S.D. Fla. 1991)

---

[7] "This tort is variously referred to throughout the case law as tortious interference with business advantage, business relations, economic relations, and prospective economic advantage. The elements, however, are the same." *Universal Marine Med. Supply, Inc. v. Lovecchio*, 8 F. Supp. 2d 214, 221 fn.4 (E.D.N.Y. 1998). The elements of a claim for tortious interference with a business relationship under Florida law are substantially similar: "(1) the existence of a business relationship, (2) the defendant's knowledge of that relationship, (3) the defendant's intentional and unjustified interference with that relationship, and (4) damage to the plaintiff as a result of the breach of the relationship." *Matrix Group Limited, Inc. v. Rawlings Sporting Goods Co.*, 477 F.3d 583, 591 (8th Cir. 2007) (citing *Ethan Allen v. Georgetown Manor*, 647 So. 2d 812, 814 (Fla. 1994)).

("[A]s a matter of law, plaintiff cannot establish a tortious interference with an advantageous business relationship, in that there was no *intention* by [defendant] to interfere with any relationship") (emphasis in original).

Nor does Plaintiff allege that Silverjet interfered with its relationship with FlyJet by "wrongful means." Courts have interpreted "wrongful means" in this context to mean "'physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference' with a business relationship." *United Magazine Co.*, 146 F. Supp. 2d at 407-08, quoting *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,* 50 N.Y.2d 183, 406 N.E.2d 445, 449, 428 N.Y.S.2d 628 (N.Y. 1980). "Wrongful means" of interference do not include the *purchase* of the third party on the open market. The fact that FlyJet had contracts with CFC at the time of the purchase does not make Silverjet's acquisition of FlyJet improper. *See also Burger King Corp. v. Ashland Equities, Inc.*, 161 F. Supp. 2d 1331, 1336 (S.D. Fla. 2001) ("The right to interfere in contractual relations, as granted to interested parties, is qualified by the obligation to proceed in good faith. This good faith requirement, common to all facets of contract law, disqualifies litigants from asserting the privilege when they have acted with *malicious* or *conspiratorial* motives") (emphasis added).

Nor can the fact that, once FlyJet was a wholly-owned subsidiary of Silverjet, Silverjet put the aircraft to its own use constitute a tort. "[A] corporate parent is privileged to interfere with the contractual relationships of its subsidiaries." *Conocophilips v. 261 E. Merrick Rd. Corp.*, 428 F. Supp. 2d 111, 123 (E.D.N.Y. 2006). *See also Koret, Inc.*, 161 A.D.2d 156, 157 (vacating award for tortious interference with contract against corporate parent because corporate parent "had a right to interfere with the contract of its subsidiary in order to protect its economic interests"); *E2-Capital Inv. v. Auerbach, Pollak & Richardson*, 2003 U.S. Dist. LEXIS 4318, at *24-25 (S.D.N.Y. 2003) ("Defendants' tortious interference claim fails because it is well settled, under New York law, that only a 'stranger' to a contract, such as a third party, can be liable for tortious interference" and third-party defendants (alleged interferers) were corporate parents of

plaintiff and not strangers to the agreement); *WMW Mach. Co. v. Koerber AG*, 240 A.D.2d 400, 401 (N.Y. App. Div. 1997) (upholding dismissal of both tortious interference with contract and tortious interference with business relations claims where "the defendants, as either the parent or a subsidiary of the [third party], have an economic interest in the [third party] sufficient to support a defense of economic justification").

While Plaintiff does allege conclusorily that Silverjet "maliciously disregarded the existing rights of CFC" (Compl. ¶ 18), such vague, unsupported allegations of malice are insufficient to give the required factual support to prove malice sufficient to state a cause of action for tortious interference. "While the Court 'must accept as true all of the factual allegations set out' in [the] complaint, it is also true that '[a] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).'" *Masefield AG v. Colonial Oil Indus.*, 05 Civ. 2231, 2006 U.S. Dist. LEXIS 5792, at *13-14 (S.D.N.Y. Feb. 15, 2006) (dismissing "conclusory allegations" of dishonesty and unfair means where those allegations lacked "any factual underpinnings") (internal citations omitted) (alteration in original). *See also M.J. & K. Co. v. Matthew Bender & Co.*, 220 A.D.2d 488, 490 (N.Y. App. Div. 1995) ("plaintiffs' cause of action [for tortious interference with business relations] … defective because their conclusory allegations without factual support are insufficient to state a cause of action").

Accordingly, Plaintiff's first claim must be dismissed, as Plaintiff has not alleged, and cannot allege, that Silverjet interfered with an existing business relationship between CFC and FlyJet either for the purpose of harming the plaintiff or by wrongful, improper means.[8]

---

[8] Moreover, it should be noted that this first claim, tortious interference with advantageous business relationship, is nothing more than a repackaging of Plaintiff's second claim, tortious interference with contract, and should be stricken accordingly. *See Camp Summit of Summitville, Inc. v. Visinski*, 2007 U.S. Dist. LEXIS 28496 at *44-45 (S.D.N.Y. April 13, 2007) (dismissing claim for tortious interference with prospective business advantage because, "to the extent that this claim apparently hinges on" the same facts as tortious interference with contract claim, defendant/counterclaim-plaintiff "is essentially reiterating her tortious interference with contract claim, which has already been dismissed).

**B.    CFC Fails to State a Claim for Tortious Interference with Contract**

Plaintiff's Count II, for tortious interference with contract, also fails to state a claim and should be dismissed.  "The elements of a properly pled tortious interference with contract claim under New York law are: '(a) that a valid contract exists; (b) that a third party had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff.'"  *Sedona Corp. v. Ladenburg Thalmann & Co.*, 2005 U.S. Dist. LEXIS 16382, at *60 (S.D.N.Y. Aug. 9, 2005), quoting *Millar v. Ojima*, 354 F. Supp. 2d 220, 229-30 (E.D.N.Y. 2005).  *See also Foster v. Churchill*, 87 N.Y.2d 744, 750 (N.Y. 1996); *Israel v. Wood Dolson Co.*, 1 NY2d 116, 120 (N.Y. 1956).  A plaintiff must also "identify a specific contractual term that was breached."  *Millar*, 354 F. Supp. 2d 230, quoting *Risley v. Rubin*, 272 A.D.2d 198, 708 N.Y.S.2d 377, 378 (1st Dep't. 2000).  Furthermore, "allegations of causation are required, as the plaintiff 'must allege in the complaint that there would not have been a breach but for defendants' conduct.'"  *Sedona*, 2005 U.S. Dist. LEXIS 16382 at *60-61, quoting *AIM Int'l Trading, L.L.C. v. Valcucine S.p.A.*, 2003 U.S. Dist. LEXIS 8594, No. 02 Civ. 1363(PKL), 2003 WL 21203503, at *4 (S.D.N.Y. May 22, 2003).[9]  Moreover, the law "requires some factual specificity in pleading claims of tortious interference with contract."  *Am. Bldg. Maint. Co. v. ACME Prop. Servs.*, 2007 U.S. Dist. LEXIS 64051, at *35 (S.D.N.Y. August 29, 2007) (citing *Antonios A. Alevizopoulos & Assocs. v. Comcast Int'l Holdings, Inc.*, 100 F. Supp. 2d 178, 186 (S.D.N.Y. 2000)).

Plaintiff has failed to plead several key elements of this claim.

First, Plaintiff has failed to plead that a valid, enforceable contract existed between it and FlyJet at the time of the alleged interference.  In the absence of a valid contract, there can be no action for interference with contract.  *Scutti Enter. LLC v. Park Place Entm't.*, 322 F.3d 211, 215 (2d Cir. 2003) ("a central requirement for this cause of action under New York law is the

---

[9] *See also Johnson Enters. of Jacksonville v. Fpl Group*, 162 F.3d 1290 (11th Cir. 1998) ("Under Florida law, the elements of a cause of action for tortious interference with a contractual relationship are: (1) The existence of a contract, (2) The defendant's knowledge of the contract, (3) The defendant's intentional procurement of the contract's breach, (4) Absence of any justification or privilege, [and] (5) Damages resulting from the breach.") (alteration in original) (citation omitted).

existence of a valid, enforceable contract between the plaintiff and a third party"). *See also Martin v. Thermo Electron Corp.*, No. 99-2547, 2001 U.S. Dist. LEXIS 24812, *16 (S.D. Fla. Jan. 16, 2001) (citing *Farah v. Canada*, 740 So. 2d 560 (Fla. 5th DCA 1999) (holding that for a claim of intentional interference with contract, the contract at issue must be enforceable)).[10]

Second, on the basis of CFC's own allegations, Silverjet was not a "third party" to the contracts at the time it "appropriated" the aircraft for its own purposes. Compl. ¶¶ 22-23. Plaintiff admits that by the time Silverjet put the plane to its own use, it had acquired FlyJet and was "FlyJet's successor in interest." Compl. ¶¶ 6, 8-9. Therefore, Silverjet was no longer a third party to the contract, and it cannot be liable for tortious interference with contract. *See, e.g., Koret, Inc. v. Christian Dior, S.A.*, 161 A.D.2d 156, 157 (N.Y. App. Div. 1990) ("It is well established that only a stranger to a contract, such as a third party, can be liable for tortious interference with a contract"); *TVT Records v. Island Def Jam Music Group*, 412 F.3d 82, 88 (2d Cir. 2005) ("One asserting a tortious interference claim must also show that the defendant was not a party to the contract with which he allegedly interfered"). Even if it was not a direct party to the initial agreements, Silverjet entered negotiations with CFC regarding the fulfillment by both parties of the terms of the contracts after Silverjet's acquisition of FlyJet. Compl. ¶ 10.

Third, Plaintiff makes no specific allegation that Silverjet "intentionally and improperly procured" FlyJet's breach of its contract with CFC, nor that FlyJet actually breached its contract to provide an airplane to CFC. Plaintiff charges only that Silverjet appropriated the aircraft in question "without the agreement of CFC and in direct violation of its rights." Compl. ¶ 23. But this is insufficient. Plaintiff does not allege that Silverjet intentionally and improperly led FlyJet, the party to the original contracts, to breach the contracts. In the absence of these fundamental allegations, the claim for tortious interference with contract fails on its face. *See, e.g., Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 425 (N.Y. 1996) (affirming Appellate Division's dismissal of claims for tortious interference with contract and advantageous business

---

[10] As noted earlier, there appears to be a dispute between the parties as to whether and when the contracts terminated.

relations where plaintiffs made no allegation that defendant intentionally procured third party's breach of its contract with plaintiff, nor that third party in fact breached its contract with plaintiff). As noted above, by using the aircraft for its own business purposes, Silverjet did not commit a recognizable tort. In the typical case of tortious interference with contract, Company A wants to do business with the customers of Company B, and induces or persuades Company C to breach its contract with Company B and do business with Company A instead. Indeed, "New York courts have limited claims of tortious interference to actions against a third person who induces a party to a contract to breach his obligation." *Klein v. Jostens*, 1985 U.S. Dist. LEXIS 18115 at *6-7 (S.D.N.Y. July 9, 1985). In this case, Silverjet did not "induce" or "persuade" FlyJet to breach its obligations to CFC. Rather, Silverjet *wholly acquired* FlyJet and assumed control of the aircraft in question, giving Silverjet – rather than FlyJet – the ability and choice whether and to what extent to fulfill or breach the contract with CFC.[11] As an interested party to the contract, Silverjet cannot be liable for inducing a breach of contract merely by freely acquiring FlyJet on the open market. *See Johnson & Johnson v. Guidant Corp.*, 2007 U.S. Dist. LEXIS 64114, at *67 (S.D.N.Y. August 29, 2007) ("The fact that an action is taken with knowledge that it will cause a breach of contract does not suffice to show tortious interference with contract").[12]

Fourth, Plaintiff fails to allege that "there would not have been a breach but for defendants' conduct." *AIM Int'l Trading, L.L.C.*, 2003 U.S. Dist. LEXIS 8594 at *15-16. Not only does CFC fail to allege this, but it admits implicitly in the Complaint that the contracts were not being implemented or performed at the time of Silverjet's acquisition. Plaintiff notes, "*upon*

---

[11] Whether and to what extent the contract was fulfilled or breached by the parties would, of course, be the proper subject of a breach of contract action in this matter.

[12] The Court in *Johnson & Johnson* was construing Indiana law on tortious interference with contract, which is substantially similar to New York law on the subject. *See also Crossland Inv. Co. v. Rhodes*, 274 F. Supp. 2d 1302, 1314 (N.D. Fla. 2003) (tortious interference claim with contract fails where defendants were "not strangers to this transaction," and noting a "party to a contract cannot tortiously interfere with her own contract"); *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 (11th Cir. 2001) ("Under Florida law, a claim for tortious interference with contract cannot lie where the alleged interference is directed at a business relationship to which the defendant is a party") (citation omitted).

*furnishing of such an aircraft, CFC was to commence* flying certain international routes from England to the United States and the Caribbean."  Compl. ¶ 5 (emphasis added).  In other words, even though the first contract between CFC and FlyJet was entered into in June 2005, the contracts were <u>not</u> being performed at the time of Silverjet's acquisition of FlyJet.  Given this failure to plead but-for causation, the Complaint is fatally deficient as to this claim.  *See Camp Summit of Summitville, Inc.*, 2007 U.S. Dist. LEXIS 28496 at *45 (dismissing claim for tortious interference with prospective business advantage as "speculative" where defendant/counterclaim-plaintiff "does not allege, as she must, that she 'would have executed specific contracts but for interference by'" plaintiff/counterclaim-defendant) (internal citations omitted); *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 498 (S.D.N.Y. 2002) (to state a claim for tortious interference with contract, "the third party's breach must have been caused by the defendant, meaning that the breach would not have occurred but for the defendant's acts").

Nor, relatedly, has Plaintiff pled the damages element of this claim.  In order to plead damages, Plaintiff would have to allege that the parties had "duly performed [their] obligations under the contract up to the time of cancellation."  *Benton v. Kennedy-Van Saun Mfg. & Eng. Corp.*, 2 A.D.2d 27, 30 (N.Y. App. Div. 1956).  But as noted above, Plaintiff does not plead – because it cannot – that it and FlyJet were performing their obligations under the contracts prior to Silverjet's acquisition of FlyJet.  Plaintiff merely pleads that it "enjoyed valuable rights through its business relationship with FlyJet, in that it had the right to use" the aircraft.  Compl. ¶ 20.  This vague pleading is plainly insufficient.  Accordingly, Plaintiff has not adequately pled damages due to alleged interference by Silverjet with the contracts.

Moreover, as with tortious interference with advantageous business relations, it is a defense to a claim of tortious interference with contract that the party allegedly interfering with a contract has a legitimate economic interest in doing so.  "The scope of what constitutes 'improper interference' … has been narrowed by the self-interest exception:  as long as the means employed are not improper or malicious, one with a financial interest in the business that is subject to the contract is privileged to interfere with the contract in order to protect that self-

interest." *Imtrac Indus. v. Glassexport Co.*, 1996 U.S. Dist. LEXIS 1022, at *22 (S.D.N.Y. February 1, 1996). *See also Record Club of Am., Inc. v. United Artists Records, Inc.*, 611 F. Supp. 211, 217 (S.D.N.Y. 1985) (under New York law, "one who has a financial interest in the business of another is privileged to interfere with a contract between the other and a third party *if* his purpose is to protect his own interests and if he does not employ improper means") (emphasis in original); *Johnson Enters. of Jacksonville*, 162 F.3d at 1321 ("Florida law recognizes the principle that actions taken to safeguard or protect one's financial interest, so long as improper means are not employed, are privileged"); *Heavener, Ogier Servs. v. R. W. Fla. Region*, 418 So. 2d 1074 (Fla. Dist. Ct. App. 1982) (economic interest defense is a total defense where defendant interferes with contract to protect existing interest).

In this case, as noted above, Plaintiff admits on the face of the Complaint that Silverjet did not acquire FlyJet or use the aircraft leased to FlyJet with the purpose of harming Plaintiff; to the contrary, it did so for its own legitimate business interest. Compl. ¶ 9. Even if such action came at the direct expense of CFC, Plaintiff does not and cannot make out a claim of malice, illegality or improper means on the part of Silverjet. *E.F. Hutton Int'l Assoc. Ltd. et al. v. Shearson Lehman Bros. Holdings, Inc.*, 281 A.D.2d 362, 363 (N.Y. App. Div. 2001) (interference by Shearson with service agreements between plaintiff and E.F. Hutton, which Shearson acquired by merger, was justified by economic interest, and "the fact that Shearson may have known that [rejecting contract with plaintiff] would negatively affect plaintiffs' ability to do business [did] not raise an issue of fact as to whether the breach was motivated by malice or accomplished by illegal means"). *See also Am. Protein Corp. v. AB Volvo*, 844 F.2d 56, 63 (2d Cir. 1988) ("Plaintiff failed to establish a *prima facie* case of tortious interference with contractual relations because the evidence showed only that Volvo executives on the board of [third party] endorsed terminating [third party's] contract with plaintiff for the legitimate business reason that it was losing money" and there was no evidence on the record of malice toward the third party) (emphasis in original); *Shea v. Hambro Am.*, 200 A.D.2d 371, 372 (N.Y. App. Div. 1994) ("Recovery for tortious interference is not permitted absent a showing that …

defendants intended to harm plaintiff … without economic or other lawful excuse or justification").

While, again, Plaintiff groundlessly claims that Silverjet acted "maliciously" in this regard (Compl. ¶ 25), such conclusory allegations are insufficient to state a cause of action. *Ruha v. Guior*, 277 A.D.2d 116 (N.Y. App. Div. 2000) ("In asserting their tortious inference with contract claim, plaintiffs' bare allegations of malice do not suffice, particularly where such allegations are contradicted by plaintiffs' own claims that defendants' actions were financially motivated"). *See also Inn Chu Trading Co. v. Sara Lee Corp.*, 810 F. Supp. 501, 506 (S.D.N.Y. 1992) ("the only motive which plaintiff ascribes to [defendant] is economic gain, which alone does not constitute malice").

As Silverjet wholly and legitimately acquired FlyJet and put its aircraft to use for its own economic interests, the economic interest defense clearly applies. For this reason, and because of the other demonstrated deficiencies in its pleadings, Plaintiff's claim for tortious interference with contract by Silverjet should be dismissed.

## III. CFC FAILS TO STATE A CLAIM FOR UNJUST ENRICHMENT

To the extent the contracts between CFC and FlyJet govern this subject matter, as discussed above, there can be no equitable claim for unjust enrichment. Unjust enrichment is a "quasi-contract claim" under which the law creates an obligation "in the *absence* of any agreement." *Goldman v. Metro. Life Ins. Co.*, 5 N.Y.3d 561, 572 (N.Y. 2005) (emphasis added); *see also Am. Honda Motor Co. v. Motorcycle Info. Network Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) (characterizing unjust enrichment as a quasi-contract claim which cannot lie where there is an adequate legal remedy). "Briefly stated, a quasi-contractual obligation is one imposed by law where there has been no agreement or expression of assent, by word or act, *on the part of either party* involved. The law creates it, regardless of the intention of the parties, to assure a just and equitable result." *Bradkin v. Leverton*, 26 N.Y.2d 192, 196 (N.Y. 1970) (emphasis added); *see also Taylor, Bean & Whitaker Mortgage Corp v. GMAC Mortgage Corp.*, No. 5:05-cv-260-Oc-10GRJ, 2006 U.S. Dist. LEXIS 39728, *28 (M.D. Fla. June 15, 2006)

(holding that where there is an available remedy at law, the equitable remedy of unjust enrichment will fail). Therefore, where there is a valid agreement, there can be no recovery under a claim of unjust enrichment.

Here, there were valid, written agreements between CFC and FlyJet, a wholly owned subsidiary of Silverjet. The terms and performance of those contracts underlie the subject matter of this dispute. Since this dispute is governed by these contracts, a claim for unjust enrichment may not be brought. *See Clark-Fitzpatrick, Inc. v Long Is. R.R. Co*., 70 N.Y.2d 382, 388, 516 N.E.2d 190, 521 N.Y.S.2d 653 ("[t]he existence of a valid and enforceable written contract governing *a particular subject matter* ordinarily precludes recovery in quasi contract for events arising out of the same subject matter") (emphasis added). *See also Textiles Network v. DMC Enters*., 07 Civ. 393 (DLC), 2007 U.S. Dist. LEXIS 64247, at *14-15 (S.D.N.Y. Aug. 31, 2007) (dismissing unjust enrichment and promissory estoppel claims where a written, valid agreement existed, thus precluding plaintiff's recovery under those claims).[13]

In addition, a claim for unjust enrichment cannot lie here because CFC fails to allege, and indeed cannot allege, that it was at any time in a position to use the plane allegedly owed to it under the contracts with FlyJet, and therefore to benefit from the contracts. Without this crucial allegation, Silverjet's alleged benefit from the use of plane held by its subsidiary cannot be considered "unjust," because a claim for unjust enrichment will lie only when "(1) the defendant was enriched, (2) *at the expense of the plaintiff*, and (3) . . . it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff." *Baron v. Pfizer, Inc*., 2007 NY Slip Op 5813, at *3 (N.Y. App. Div. 2007) (citation omitted) (emphasis added). "The essence of [this] cause of action is that one party is in possession of money or property that rightly belongs to another." *Clifford R. Gray, Inc. v. Le Chase Constr. Servs*., LLC, 2006 NY Slip Op 5850, at *4 (N.Y. App. Div. 2006); *see also United Wis. Servs. V. Abbott Labs (In re Terazosin Hydrochloride Antitrust Litig.)*, 220 F.R.D. 672, 697 (S.D. Fla. 2004) (Florida's law on unjust

---

[13] There would be no prejudice to CFC in dismissing the spurious claim for unjust enrichment, given that the limitation period under the contracts is, under applicable English law, six years from the date the cause of action accrued, namely the breach of contract occurred.

enrichment mirrors the elements of unjust enrichment recited in RESTATEMENT (FIRST) OF RESTITUTION § 1 cmt. b, which provides that a "person confers a benefit upon another if he gives to the other possession of or some interest in . . . chattels . . . .").

Here, Silverjet was not enriched "at the expense of the plaintiff," and it is not inequitable to permit Silverjet to retain its profits since, as Plaintiff admits on the face of the Complaint, the plane allegedly owed to CFC was not being used (by CFC or otherwise) before or at the time of Silverjet's acquisition of FlyJet. Compl. ¶ 5. Nor did the plane "belong" to CFC, because CFC has not alleged that it was in a position to fulfill its end of the contract (which it was not). Accordingly, Plaintiff's claim for unjust enrichment should be dismissed.

## CONCLUSION

For the reasons stated herein, Plaintiff's claims in tort against Silverjet set forth in the Complaint should be dismissed with prejudice.

Dated: October 1, 2007
    New York, New York

Respectfully submitted,
MORRISON & FOERSTER LLP

__/s/Geoffrey C. Upton_____
By: Karen L. Hagberg
Geoffrey C. Upton
1290 Avenue of the Americas
New York, New York 10104
(212) 468-8000

Attorneys for Silverjet plc