IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CASE NO. 07-CIV-6371

CFIRSTCLASS CORPORATION, a
Florida Corporation,

    Plaintiff,

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

vs.

SILVERJET, PLC., a Foreign Corporation,

    Defendant.
_____/

    The Plaintiff herein, CFIRSTCLASS CORPORATION (CFC) hereby furnishes the Court with its Memorandum of Law in Opposition to the Defendant, SILVERJET, PLC's (SILVERJET) Motion to Dismiss.

## I. PRELIMINARY STATEMENT:

    CFC has sued SILVERJET in a three-Count Complaint, asserting that SILVERJET deliberately interfered with an agreement between CFC and Flyjet. The Complaint asserts two tort counts and also asserts a third count for Unjust Enrichment.

    The Agreements alleged to have been interfered with by SILVERJET were two contracts by which CFC had rights to the fitting out, delivery and operation of an airplane owned by an English company known as Flyjet. It is these CFC/Flyjet contracts which the intentional interference is asserted.

    SILVERJET has filed its Motion to Dismiss, relying on a forum selection clause in the Agreements between CFC and Flyjet which established jurisdiction in England or Wales and further has asserted that the Complaint fails to state claims upon which relief can be granted. Although the Court is bound to consider a Motion to Dismiss exclusively on the four corners of the Complaint, SILVERJET's counsel has furnished the Court with the CFC/Flyjet Agreements in support of its Motion to Dismiss. The forum selection provisions of these Agreements are identical and indicate:

> 12.1 This Agreement wherever made or to be performed shall be governed and construed in accordance with English law and all disputes arising hereunder shall be submitted to the exclusive jurisdiction of the Courts of England and Wales.
> . . .

CFC avers that these forum selection clauses in the agreements with Flyjet do not embrace the claims against SILVERJET since SILVERJET was not a party to those agreements and CFC did not agree to any jurisdictional limitations in such claims and, further, the forum selection clauses themselves do not contemplate or include these particular tort claims.

As to SILVERJET's arguments relating to the tort and unjust enrichment claims, CFC asserts all of these claims are fully and properly pled in accordance with the pleading requirements of Federal Rules of Civil Procedure and the applicable law.  At best, the assertions made in SILVERJET'S Motion to Dismiss would constitute affirmative defenses to the claims.

## II.  THE FORUM SELECTION PROVISIONS CONTAINED IN THE CFC/FLYJET AGREEMENTS DO NOT APPLY TO THIS LAWSUIT

It is clear without question that SILVERJET is not a party to either of the CFC/Flyjet Agreements which contain the forum selection clause.  Therefore, it cannot rely, directly, on any contractual right to have jurisdiction of the dispute exclusively remitted to the Courts of England or Wales, since a party (i.e., CFC) cannot be obliged to commit to a jurisdiction which it has not agreed to, Thompson -CSF, S.A. v. American Arbitration Association, 64 F.3d 773 (2nd Cir 1995).  This Court's inquiry must now extend to the question of whether a non-signatory (i.e., SILVERJET) can invoke the forum selection provisions of CFC/Flyjet Agreements.  SILVERJET cannot meet any of the tests to acquire such a right.

While most cases cited in SILVERJET'S Memorandum involve forum selection (or arbitrally clauses in contracts directly between the parties, not the situation in this case, there are references applicable to these proceedings.  Thomson-CSF, S.A., supra, establishes the traditional bases for binding a non-signatory to a contract.  These are

1) Incorporation by reference;
2) Assumption;
3) Agency;
4) Veil piercing/alter ego;
5) estoppel.
Id at 776.

None of these elements are either asserted or apparent in favor of SILVERJET for the proposition that it may invoke the forum selection clause.

The unreported decision in the Southern District of New York relied on by SILVERJET in its Memorandum, Direct Mail Production Services Limited v. MBNA Corporation, 200 WL 127759 (S.D.N.Y.: September 7, 2000) does furnish the Court with a further test to determine whether a non-signatory may invoke a forum selection clause.

> However, a non-party may nonetheless invoke such a clause if the non-party is "closely related" to one of the signatories. In particular, "[t]he relationship between the non-party and the signatory must be sufficiently close so that the non-partys enforcement of the forum selection clause is 'foreseeable' by virtue of the relationship between the signatory and the party sought to be bound." (Citations omitted)
>
> . . .
>
> In discerning whether parties are "closely related", the U.S. Court of Appeals for the Second Circuit has looked to whether the non-signatory [is an] intended beneficiar[y] entitled to enforce" the clause in question. *Citing Roby v. Corporation of Lloyds'*, 996 F.2d 353, 1358 (2nd Cir. 1993).
> Direct Mail at 3 and 4.

The analysis in Direct Mail, supra, absolutely establishes that in this case, SILVERJET cannot rely on the fact that it is a related party entitled to invoke the forum selection clause. Simply stated:

> A. The contracts between CFC and Flyjet contain no language concerning the binding of "agents, employees, successors or assigns" to those agreements;
> B. There is no mention in the contracts that any other party or parties are contemplated to benefit or be involved in the transaction;
> C. The alleged purpose of Flyjet becoming a subsidiary of SILVERJET was to create the breach of contract which is asserted in the Complaint;

On the other hand, the Direct Mail fact pattern is replete with references acknowledging that the parties knew that benefits would be conferred on related companies. That was the principal reason the forum selection clause was found to bind a non-party.

In all events, both Thomson, supra and Smoothline Ltd. V. North American Foreign

Trading Corp, 249 F.3d 147 (2nd Cir 2001) indicate that the Court would have to conduct an evidentiary hearing before it could conclude that there is a close enough affiliation to bind these parties to the forum selection clause.

The <u>Direct Mail</u> decision is instructive to this Court for yet another purpose. Assuming, that the Court were to entertain the possibility that such a forum selection clause does apply to the instant dispute, that clause, referenced above, refers to "disputes arising hereunder". According to the decision in <u>Direct Mail</u>, that would not embrace the claims made against SILVERJET in these proceedings.

> By contrast, where a clause applied more narrowly to "litigation between the parties concerning the alleged breach of this Agreement or the meaning, effect, application and/or interpretation of its terms" the Court found that the clause encompassed the Plaintiff's breach of contract claim but not a tort claim of fraudulent inducement. *See Bon Jour Group, Ltd. v. Elan Polo, Inc.*, No. 96CIV 6705, 1997 WL 4018142 (S.D.N.Y. July 16, 1997)
> <u>Direct Mail</u> at 5.

(SILVERJET has made reference to the fact that the asserted tort claims are simply "artfully pled" claims which in reality ought to be breach of contract claims against Flyjet. That is pure sophistry: this is not a contract claim against Flyjet, it is a claim against SILVERJET for inducing the breach of the contract between CFC and Flyjet).

### III.  THE COMPLAINT ADEQUATELY STATES A CLAIM FOR RELIEF FOR BOTH TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP AND TORTIOUS INTERFERENCE WITH CONTRACT.

CFC's Complaint asserts:

A. The execution and existence of two contracts between itself and Flyjet (Paragraph 5 of the Complaint).

B. Knowledge by SILVERJET of CFC's contract rights (Paragraph 15 and 22 of Complaint).

C. The wrongful and deliberate nature of SILVERJET'S actions (Paragraphs 15, 16, 18, 22, 23 and 25 of the Complaint).

D. Damage sustained by CFC (Paragraphs 6, 7, 17 and 24 of the Complaint).

As to both tortious interference claims, the pleading elements are fully met.

**a.  The elements of tortious interference with advantageous business relationship are sufficiently pled.**

For the purposes of this Memorandum, CFC agrees that the applicable law of the State of New York and of the State of Florida with respect to tortious interference is largely the same. Therefore, reference will be made to New York law as applied in the Second Circuit.

Rather than accepting the elements of a claim for tortious interference with advantageous business relationship as reflected in SILVERJET'S memorandum, CFC would invite the Court's attention to the later decision in Scutti Enterprises, LLC. v. Park Place, 323 F.3d 211 (2nd Cir. 2003), wherein the elements of this tort are stated as:

i) The Plaintiff had business relations with a third party;

ii) The Defendants interfered with those business relations;

iii) The Defendants acted for a wrongful purpose or used dishonest inferior or improper means; and

iv) The Defendants' acts injured the relationship.

Scutti at 215.

SILVERJET takes the position that the Complaint is inadequate with respect to the third element - the purpose or means used to interfere with the relationship.  That is plainly wrong under the current state of the law.

Scutti, supra focuses specifically on the question of whether advancing a party's own interests would insulate it sufficiently from liability for tortious interference with an advantageous business relationship.  SILVERJET'S Memorandum copiously recites a series of reasons why advancing SILVERJET's own economic interest is a complete defense to the claims at the pleading stage of these proceedings.  The seminal paragraph in Scutti, supra is completely at odds with SILVERJET'S conclusions and is most instructive to this Court:

> Park Place points us to language in *PPX Enters v. Audiofidelity Enters.,* 818 F.2d 266, 269 (2d Cir. 1987), that states when, as here, the defendants' acts were taken to advance its own competing interests, "the claim will fail unless the means employed include criminal or fraudulent conduct."  This language, however, was subsequently disavowed in our opinion in *Hannex.*  There, we noted that *PPX*'s limitation was "unduly narrow" and an "apparently incorrect characterization of New York law" in light of the New York Court of Appeals's decision in *NBT Bancrop v.*

> *Fleet/Norstar Fin. Group*, 87 N.Y.2d 614, 641 N.Y.S.2d 851, 586-87, 664 N.E. 2nd 492, 497-98 (1996). *See Hannex*, 140 F.3d at 206 n.9. Instead, the appropriate standard is whether Park Place employed "wrongful means," defined under New York law as "representing 'physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the [prospective] contract.' " *NBT Bancorp,* 664 N.E.2d at 497, 641 N.Y.S.2d at 586 (quoting *Guard-Life Corp. V. S. Parker Hardware Mfg.Corp.,* 406 N.E. 2d 445, 449, 428 N.Y.S.2d 628, 632 (N.Y.1980)). This standard "encompasses a considerably wider range of conduct" than that contemplated by *PPX.Hannex,* 140 F.3d at 206 n.9. Scutti, supra at 216.

The Scutti court goes on to discuss the circumstances of the economic pressure and concludes

> [W]e find that whether Scutti's" allegations of economic pressure are of the degree necessary to sustain an action is a question of fact best answered upon summary judgment or at trial". (emphasis added)  (Internal Citations Omitted).
> Scutti, supra at 216.

That comports, again, precisely with the pleading requirements in the Federal Courts.

> The Court may not dismiss a complaint unless it appears beyond doubt, even when the Complaint is liberally construed, that the Plaintiff can prove no set of facts which would entitle him to relief. (Internal Citations Omitted)
> Complaints alleging torts are held to the less strengent notice requirements of Rule 8(a)(2), "a short and plain statement of the claim showing that the pleader is entitle to relief." Fed. R. Civ. P. 8(a)(2). "The rule is fashioned in the interest of fair and reasonable notice, not technicality, . . . more extensive pleading of fact is not

>  required because the Federal Rules of Procedure provide other
>  devices besides pleadings that will serve to define the facts and
>  issues and dispose of unmeritorious claims.
>  Scutti, supra at 214, 215.

The factual recitations which SILVERJET submits in support of its motion to dismiss the tort claims are in the nature of affirmative defenses to the claim, resting on the privilege SILVERJET believes it has and had to interfere with or terminate the contract between CFC and Flyjet. This action is not yet at the affirmative defense disposition stage. *See* White Plains Coat & Apron Co., Inc. v. Cintas Corp., 460 F.3d 281 (2d Cir. 2006). (It is noteworthy that this decision refers to the claimed business privilege as existing when the alleged tort is committed. The defense is unavailable when the defendant has "no previous economic relationship with the breaching party" White, supra, at 282 and 284. CFC's allegations in this action assert no previous relationship between SILVERJET and Flyjet until SILVERJET'S acquisition of Flyjet for the purpose of taking the airplane commited to CFC).

The Memorandum furnished on behalf of SILVERJET recites, among other things, that the Complaint has failed to plead the existence of an enforceable contract. That assertion is curious, since Paragraphs 5 and 11, together, assert the existence of the contract and SILVERJET'S attempt to terminate them on May 25, 2007. Paragraphs 13 and 20 assert CFC's rights under the contract. Similarly, the assertions that the contracts were not being performed is incomprehensible: the complaint asserts at Paragraphs 5 and 7 that the contracts were in the process of being fulfilled, because the relevant airplane was being fitted-out for service. Finally, it is a complete mischaracterization of pleading to recite that SILVERJET was not a third party or stranger to the contractual relationship at the time the aircraft was appropriated. The complaint at Paragraphs 14 and 21, specifically asserts that the acquisition of the stock in Flyjet by

SILVERJET was the mechanism whereby the tortious interference was effected.

In all events, the recitations on the part of SILVERJET noted above are all fact-based defenses to the Complaint, substantially in the nature of asserting a business-related privilege to have interfered with the Contract between CFC and Flyjet. These factual defenses are, therefore, properly considered as affirmative defenses and not properly considered in a Motion to Dismiss.

The very cases cited by SILVERJET in its Memorandum completely support CFC's right to proceed on this Complaint. By way of example, in American Building Maintenance Company of New York v. Acme Property Services, 2007 WL 2492921 (N.D.N.Y.) reasserts those pleading and proof requirements previously referenced in Scutti, supra and additionally advises the Court that at the Motion to Dismiss (or Motion for Judgment on the Pleadings) stage the issue is not whether a Plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. American Building Maintenance at 3. This decision of the Northern District of New York then goes on to describe what it found inadequate in the Plaintiff's tortious interference claim, for example:

> However, the Hennesey's explain that there is no showing that they were involved with the termination of the contract with the Swanson Defendants and, therefore ABM's tortious interference with the contract claim must fail
>
> . . .
>
> However, the Circuit found that Kirch and his co-plaintiff failed to allege actual breach when they contended only that the third-party "walked away, and [the contract] fell apart". Id. The Circuit inferred from the "walked away" allegations only that the third-party decided not to proceed, which did not amount to an allegation that it actually breached the contract by violating its term. American Building, supra, at 10 and 11.

This factual basis for dismissal is a far cry from the specific facts contained in the Complaint made herein by CFC against SILVERJET.

In summary, as to the tort claims, CFC has alleged a plan whereby SILVERJET created the vehicle for acquisition of Flyjet calculated principally to have Flyjet breach the contract with CFC (by acquiring it for the sole purpose of breaching the contract), knowledge on the part of SILVERJET of the existence of the contract between CFC and Flyjet, and damages incurred by CFC. Under the applicable law, CFC is entitled to go forward and factually develop its claim:

SILVERJET is perfectly free to assert its claims of privilege and appropriate business or economic interest as affirmative defenses.

### III. CFC's claim for unjust enrichment is an appropriate alternative claim for relif:

Pursuant to Federal Rules of Civil Procedure 18(a), CFC has a right to "join, either as independent or as alternate claims, as many claims, legal, equitable or maritime, as the party has against an opposing party".  Thus pleading the equitable claim of unjust enrichment in conjunction with tort claims is perfectly permissible under the Rules of Procedure.  *See also* Mackenswork v. S.S. American Merchant, 28 F.3d 246 (2d Cir. 1994).  Merix A.G. v. Fairchild Western Systems, Inc., 29 F.3d 821 (2d Cir. 1994).

It is unnecessary to again confront SILVERJET's claim in this portion of its Memorandum that there is a contract which bars the equitable claim.  The contract which is asserted to bar the equitable claim is between CFC and Flyjet, not between CFC and the Defendant, SILVERJET; this allusion to a contract is an ineffective attempt to misdirect the legal argument on this point.   The elements of a claim for unjust enrichment are very straightforward: the Plaintiff must establish (1) that the Defendant benefitted; (2) at the Plaintiff's expense; and (3) that equity and good conscience require restitution.  Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F. 3d 573 (2nd Cir. 2006).

It is alleged in the Complaint that SILVERJET has reaped substantial benefit by having appropriated CFC's airplane and equitable relief is called for to set this right.   This unjust enrichment claim seeks damages different from the damage claims under the tortious interference.  CFC asserts that it had rights to an airplane which SILVERJET appropriated and used for its own profitable venture.  Therefore, its profits derive from rights which were held by CFC.

The Beth Israel Medical Center case goes on to discuss New York law in connection with

the ability to proceed in unjust enrichment (also referred to as quasi-contract), describing the bar to proceeding in this equitable claim as follows:

> It is impermissible, however, to seek damages in actions sounding in quasi-contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties. (Citation omitted) <u>Beth Israel</u>, <u>supra</u> at 587.

At this juncture, the Court can determine from the pleadings that no contract between CFC and SILVERJET exists which embraces the subject matter of the unjust enrichment claim, the claim in the unjust enrichment portion of the Complaint concerns damages different from those sought in the tort claims and the elements of pleading a claim in unjust enrichment have been fully met.

## **CONCLUSION**

Based on the foregoing, the Motion on behalf of SILVERJET to dismiss the Complaint should be denied and the Defendants should be required to answer the instant Complaint.

Dated: October 10, 2007.

>Respectfully submitted,
>LAW OFFICES OF
>NORMAN MALINSKI, P.A.
>
>By:   /s/ Norman Malinski
>2875 Northeast 191st Street
>Suite 508
>Aventura, Florida 333180
>Telephone: (305) 937-4242
>Facsimile: (305) 937-4261
>
>Attorney for CFIRSTCLASS CORP.