UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CFIRSTCLASS CORPORATION, : 07 Civ. 6371 (SHS)
 :
    Plaintiff, : OPINION & ORDER
 :
   -against- :
 :
SILVERJET PLC, :
 :
    Defendant. :
----------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

  Between 2005 and 2006, plaintiff Cfirstclass Corporation entered into two contracts with FlyJet Limited, a London-based enterprise, pursuant to which FlyJet agreed to provide Cfirstclass with an aircraft to fly between England, the United States, and the Caribbean. According to Cfirstclass, defendant Silverjet PLC subsequently acquired FlyJet in order to take control of the aircraft for its own transatlantic air service. Contending that FlyJet's failure to deliver the aircraft caused Cfirstclass significant financial injury, Cfirstclass asserts claims against Silverjet for tortious interference with an advantageous business relationship, tortious interference with contract, and unjust enrichment. Silverjet now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting that Cfirstclass's claims are barred by the forum selection clauses contained in the parties' agreements. Because Cfirstclass's claims are within the scope of the forum selection clauses and enforcing the clauses would be neither unreasonable nor unjust, that motion is granted.

## I. BACKGROUND

  On June 7, 2005, and January 18, 2006, Cfirstclass and FlyJet entered into, respectively, an Aircraft Seat Charter Agreement and a General Sales Agency Agreement. (Compl. ¶ 5;

Aircraft Seat Charter Agreement, Ex. A to Decl. of Geoffrey C. Upton dated Oct. 1, 2007

("Upton Decl."); General Sales Agency Agreement, Ex. B to Upton Decl.)  These contracts

required FlyJet to provide Cfirstclass with a specially configured Boeing 767-200 aircraft, with

which plaintiff was to fly certain international routes between England, the United States, and the

Caribbean.  (Compl. ¶ 5.)  Pursuant to the agreements, Cfirstclass deposited $750,000 with

FlyJet.  (Id. ¶ 6.)  Cfirstclass alleges that it also spent more than $2 million to complete a custom

fitting of the aircraft and to prepare to service the aircraft once it was delivered.  (Id. ¶ 7.)

    In approximately October 2006, Silverjet acquired all of the outstanding shares of FlyJet

and all its assets.  (Id. ¶ 8.)  According to Cfirstclass, Silverjet did so in order to take control of

FlyJet's Boeing 767-200 as part of a plan to inaugurate its own transatlantic air service.  (Id. ¶ 9.)

Allegedly, Silverjet has subsequently derived substantial income from its use of the aircraft.

(Id.)

    One month after Silverjet acquired FlyJet, the parties agreed that Silverjet would provide

Cfirstclass with a comparable aircraft by February 2007 or pay a monthly penalty of $100,000

for each month after February 2007 that delivery of the plane was delayed.  (Id. ¶ 10.)  FlyJet

failed to furnish any aircraft, however, and, in a letter dated May 25, 2007, it purported to

terminate the agreements and assess charges against the $ 750,000 deposit that Cfirstclass had

given FlyJet.  (Id. ¶ 11.)

    The Aircraft Seat Charter Agreement and the General Sales Agency Agreement contain

identical "Applicable Law and Jurisdiction" clauses that provide as follows:  "This Agreement

wherever made or to be performed shall be governed and construed in accordance with English

law and all disputes arising hereunder shall be submitted to the exclusive jurisdiction of the

Courts of England and Wales."  (Aircraft Seat Charter Agreement ¶ 12.1; General Sales Agency

Agreement ¶ 12.1.)

## II.  DISCUSSION

There is a split of authority in the Second Circuit regarding the appropriate procedural

mechanism by which to enforce a forum selection clause.  Decisions variously suggest that the

proper vehicle would be (1) a motion to dismiss for lack of subject matter jurisdiction pursuant to

Fed. R. Civ. P. 12(b)(1), see AVC Nederland B.V. v. Atrium Inv. Partnership, 740 F.2d 148, 152

(2d Cir. 1984); (2) a motion to dismiss for improper venue pursuant to Fed. R. Civ. P. 12(b)(3),

see Phillips v. Audio Active Ltd., 494 F.3d 378, 382 (2d Cir. 2007); and (3) a motion to dismiss

for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), see Evolution Online Systems,

Inc. v. Koninklijke PTT Nederland N.V., 145 F.3d 505, 508 n.6 (2d Cir. 1998).  But see New

Moon Shipping Co. v. MAN B&W Diesel AG, 121 F.3d 24, 28-29 (2d Cir. 1997) ("[T]here is no

existing mechanism with which forum selection enforcement is a perfect fit").  Silverjet brings

the present motion pursuant to Rule 12(b)(1), which the Court believes is appropriate.[1]  See

Direct Mail Prod. Servs. Ltd. v. MBNA Corp., No. 99 Civ. 10550 (SHS), 2000 WL 1277597, at

*2 (S.D.N.Y. Sept. 7, 2000).  Cfirstclass does not contest Silverjet's choice of procedural

mechanism.

The burdens on a plaintiff opposing enforcement of a forum selection clause are similar

to those "imposed on a plaintiff to prove that the federal court has subject matter jurisdiction

over his suit or personal jurisdiction over the defendant," and accordingly, courts apply the

standard of review applicable to motions to dismiss for lack of jurisdiction, taking the facts in the

---

[1] In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), a court may consider evidentiary matter outside the pleadings, "by affidavit or otherwise," regarding the existence of jurisdiction.  Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986); see State Employees Bargaining Agent Coalition v. Rowland, 494 F.3d 71, 77 n.4 (2d Cir. 2007).  Accordingly, the Court will consider the two agreements between Cfirstclass and FlyJet, which were annexed to an affidavit in support of Silverjet's motion to dismiss, because they contain the forum selection clauses at issue and thus are germane to the question of the Court's subject matter jurisdiction.

light most favorable to the party resisting enforcement of the forum selection clause.  New Moon Shipping, 121 F.3d at 29.

"Determining whether to dismiss a claim based on a forum selection clause involves a four-part analysis" that was recently summarized in Phillips as follows:

> The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement.  See, e.g., D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 103 (2d Cir.2006).  The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties are required to bring any dispute to the designated forum or simply permitted to do so.  See John Boutari & Son, Wines & Spirits, S.A. v. Attiki Imps. & Distribs. Inc., 22 F.3d 51, 53 (2d Cir.1994).  Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause.  See, e.g., Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1358-61 (2d Cir.1993).
>
> If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable.  See id. at 1362-63.  The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."  M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972) . . . .

Phillips, 494 F.3d at 383-84 (internal quotation marks and citations omitted).

The Court now turns to applying each factor to this action.

First inquiry:  Was the clause reasonably communicated to the party resisting enforcement?  Here, there is no dispute that Cfirstclass was aware that the two contracts contained the forum selection clauses at issue since Cfirstclass was a party to each contract.

Second inquiry:  Is the clause mandatory or permissive?[2]  The forum selection clauses at issue here both read as follows:  "This Agreement wherever made or to be performed shall be

---

[2] The Second Circuit has suggested that where the contract contains a choice-of-law provision, the second and third parts of the four-part inquiry should be governed by the law that it specifies—that is, the law that will govern interpretation of the contract itself.  Phillips, 494 F.3d at 386.  In the present action, then, the law of England would apply.  However, where, as here, the parties do not invoke that law in their briefs, courts may apply "general contract law principles and federal precedent to discern the meaning and scope of the forum clause."  Id.  The fourth part of the analysis, as a procedural rule, is governed by federal law.  Id. at 384.

governed and construed in accordance with English law and all disputes arising hereunder shall

be submitted to the exclusive jurisdiction of the Courts of England and Wales." (Aircraft Seat

Charter Agreement ¶ 12.1; General Sales Agency Agreement ¶ 12.1.) On their face, these

clauses are mandatory, since their language plainly declaims "the parties' intent to make

jurisdiction exclusive." John Boutari & Son v. Attiki Importers, 22 F.3d 51, 52-53 (2d Cir.

1994) (internal quotation marks omitted); see Phillips, 494 F.3d at 386 (finding mandatory a

forum selection clause providing that "any legal proceedings that may arise out of [the

agreement] are to be brought in England").

The third and fourth inquiries are the focus of the present motion. Third inquiry: Are

both the parties and the claims in the action subject to the forum selection clauses? See Boutari,

22 F.3d at 52-53; Phillips, 494 F.3d at 383.

A.    Are the Parties to the Action Subject to the Forum Selection Clause?

The first part of the third inquiry is whether Silverjet may invoke the forum selection

clauses in Cfirstclass's agreements with FlyJet, Silverjet's predecessor. A non-party to a

contract may invoke a contractual forum selection clause if the non-party is "closely related" to

one of the signatories to the contract such that "the non-party's enforcement of the . . . clause is

foreseeable by virtue of the relationship between the signatory and the party sought to be bound."

Direct Mail, 2000 WL 1277597, at *3 (internal quotation marks omitted); see Hugel v.

Corporation of Lloyd's, 999 F.2d 206, 209-10 (7th Cir. 1993); Manetti-Farrow, Inc. v. Gucci

America, Inc., 858 F.2d 509, 514 n.5 (9th Cir. 1988). "A non-party is 'closely related' to a

dispute if its interests are 'completely derivative' of and 'directly related to, if not predicated

upon' the signatory party's interests or conduct." Cuno, Inc. v. Hayward Indus. Prods., Inc., No

03 Civ. 3076 (MBM), 2005 WL 1123877, at *6 (S.D.N.Y. May 10, 2005) (quoting Lipcon v.

Underwriters at Lloyd's, London, 148 F.3d 1285, 1299 (11th Cir. 1998)).

According to the complaint, defendant is FlyJet's successor, having "acquired all of [its] issued shares . . . and, thereby, succeeded to all of [its] assets." (Compl. ¶ 8.) A successor to a signatory to a forum selection clause is a closely related entity that may invoke the clause against another signatory party. See Dayhoff Inc. v. H.J. Heinz Co., 86 F.3d 1287, 1297 (3d Cir. 1996); Int'l Private Satellite Partners, L.P. v. Lucky Cat Ltd., 975 F. Supp. 483, 486 (W.D.N.Y. 1997). In Dayhoff, for example, the Third Circuit concluded that the successor corporation to a signatory to a contract, unlike the signatory's sister corporation, could invoke the contract's forum selection and arbitration clauses against the other signatory to the contract. 86 F.3d at 1297. Similarly, in Hugel, an individual, who was signatory to a contract containing a forum selection clause, owned 99 percent of a corporation, which, in turn, wholly owned a second corporation. The Seventh Circuit held that both corporations were bound by the forum selection clause because both were closely related to the individual signatory. Hugel, 999 F.2d at 210.

Applying the reasoning of these decisions, the Court concludes that Silverjet may invoke the forum selection clauses in FlyJet's agreements with Cfirstclass. As FlyJet's successor, Silverjet is closely related to FlyJet, in that its interests in this action are either "completely derivative of" or "directly related to, if not predicated upon" FlyJet's interests. Cuno, 2005 WL 1123877, at *6 (internal quotation marks omitted).

B.    Are the Claims in the Action Subject to the Forum Selection Clause?

The next question is whether plaintiff's claims—for tortious interference with an advantageous business relationship, tortious interference with contract, and unjust enrichment— are within the scope of the forum selection clauses. The scope of a forum selection clause is not limited solely to claims for breach of the contract that contains it. Roby v. Corp. of Lloyd's, 996

F.2d 1353, 1361 (2d Cir. 1993).  Whether a forum selection clause encompasses other claims

depends principally on how broadly the clauses are worded.  See id. at 1361; Direct Mail, 2000

WL 1277597, at *5.  However, "[a] forum selection clause should not be defeated by artful

pleading of claims not based on the contract containing the clause if those claims grow out of the

contractual relationship, or if the gist of those claims is a breach of that relationship."  Anselmo

v. Univision Station Group, Inc., No. 92 Civ. 1471 (RLC), 1993 WL 17173, at *2 (S.D.N.Y. Jan

15, 1993) (internal quotation marks omitted); see Roby, 996 F.2d at 1360 ("We refuse to allow a

party's solemn promise to be defeated by artful pleading.").

       Thus, courts, including this one, have held that "a contractually-based forum selection

clause will also encompass tort claims if the tort claims ultimately depend on the existence of a

contractual relationship between the parties, or if resolution of the claims relates to interpretation

of the contract, or if the tort claims involve the same operative facts as a parallel claim for breach

of contract."  Direct Mail, 2000 WL 1277597, at *6 (internal quotation marks and citations

omitted); see Hugel, 999 F.2d at 209 ("Regardless of the duty sought to be enforced in a

particular cause of action, if the duty arises from the contract, the forum selection clause governs

the action. . . . '[W]here the relationship between the parties is contractual, the pleading of

alternative non-contractual theories of liability should not prevent enforcement of such a bargain

[as to the appropriate forum for litigation].'" (quoting Coastal Steel Corp. v. Tilghman

Wheelabrator, Ltd., 709 F.2d 190, 203 (3d Cir. 1983)).

       The forum selection clauses at issue here apply to questions regarding the construction of

the agreements and to "all disputes arising hereunder."  (Aircraft Seat Charter Agreement ¶ 12.1;

General Sales Agency Agreement ¶ 12.1.)  The United States Court of Appeals for the Second

Circuit recently construed a similar phrase—"arising out of"—in a forum selection clause as

relatively narrow and not "encompassing all claims that have some possible relationship with the contract, including claims that may only 'relate to,' be 'associated with,' or 'arise in connection with' the contract." Phillips, 494 F.3d at 389. Thus, the court concluded, a party's copyright claim did not "arise out of" the musical recording contract containing the forum selection clause because the party resisting enforcement of the clause "d[id] not rely on the recording contract to establish his ownership of the relevant copyrights, but [instead relied] on his authorship of the work" pursuant to statute. Id. at 390.

 In contrast to the copyright claim in Phillips, Cfirstclass's claims here rely fundamentally on the terms of the agreements. All three of its causes of action are expressly premised on assertions regarding its rights involving the aircraft pursuant to the two agreements (Compl. ¶¶ 13, 15, 16, 18, 20, 22, 23, 25, 28), and resolution of these claims will thus necessarily require analysis of the parties' rights and duties under the agreements. Cfirstclass's claims are therefore within the scope of the forum selection clauses. See Hugel, 999 F.2d at 208-09 (claim of tortious interference with a business relationship was encompassed by a forum selection clause applicable to "any dispute and/or controversy of whatsoever nature arising out of or relating to the Member's membership of, and/or underwriting of insurance business at, Lloyd's"); Brennen v. Phyto-Riker Pharms., Ltd., No 01 Civ. 11815 (DLC), 2002 WL 1349742, at *4 (S.D.N.Y. June 20, 2002) (forum selection clause that applied to "any action, suit or proceeding arising out of or relating to this Agreement" encompassed a claim for tortious interference with a business opportunity); U.S. Fid. & Guar. Co. v. Pertroleo Brasileiro S.A.-Petrobas, No. 98 Civ. 3099 (JGK), 2001 WL 300735, at *20 (S.D.N.Y. Mar. 27, 2001) (forum selection clauses covering "any questions arising from performance of the [contracts]" and disputes "arising under" the contracts encompassed a claim for tortious interference because that claim was "dependant on

and is derivative of the contractual relationship"); <u>Direct Mail</u>, 2000 WL 1277597, *6 (forum

selection clause providing that the "Agreement shall be governed by and construed in accordance

with English law and the parties hereto agree that the English courts shall have exclusive

jurisdiction" encompassed a claim for tortious interference with business relationships).

      C.    <u>Enforceability of the Clauses</u>

Fourth inquiry:  Has the party resisting enforcement of the forum selection clause

rebutted the presumption of enforceability?  <u>See</u> <u>Phillips</u>, 494 F.3d at 383-84 (quoting <u>M/S</u>

<u>Bremen</u>, 407 U.S. at 15); <u>see</u> <u>New Moon Shipping</u>, 121 F.3d at 29.

"If the forum clause was communicated to the resisting party, has mandatory force and

covers the claims and parties involved in the dispute, it is presumptively enforceable."  <u>Phillips</u>,

494 F.3d at 383.  The resisting party may overcome this presumption by making a "sufficiently

strong showing" that the clause is unenforceable because (1) "its incorporation was the result of

fraud or overreaching"; (2) "the law to be applied in the selected forum is fundamentally unfair";

(3) "enforcement contravenes a strong public policy of the forum state"; or (4) "trial in the

selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived

of his day in court."  <u>Id.</u> at 384, 392.

Here, Cfirstclass does not offer any reason why the forum selection clause is

unenforceable, and the Court has not independently identified any such basis.  There is no

suggestion that fraud or overreaching led to the incorporation of the forum selection clauses into

the agreements, and Cfirstclass does not suggest that it would be unable to obtain relief on its

claims in the courts of England and Wales.  Nor would requiring Cfirstclass to vindicate its

claims in those courts violate any strong public policy of which this Court is aware.  <u>Cf.</u> <u>Roby</u>,

996 F.2d at 1365.  Finally, although litigating these claims in England rather than New York

would certainly be more burdensome for Cfirstclass, which has its principal place of business in Florida, there is no suggestion that it would be so difficult as to deprive Cfirstclass of its day in court.

## III.    CONCLUSION

Silverjet is a proper party to invoke the two mandatory forum selection clauses in Cfirstclass's agreements with FlyJet, Silverjet's predecessor, and Cfirstclass's claims require analysis of the parties' rights and duties under the agreements. Thus, the clauses are presumptively enforceable, and plaintiff has not rebutted that presumption. Accordingly, defendant's motion to dismiss the complaint is granted.

Dated: New York, New York
       June 11, 2008

SO ORDERED:

Sidney H. Stein, U.S.D.J.